# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

MARIA V. RUIZ DE BALDERAS AND
JAMMIE SHELTON, Individually, and on
Behalf of All Others Similarly Situated,

    **Plaintiffs**

**V.**

ETX SUCCESSOR ATHENS, F/K/A EAST
TEXAS MEDICAL CENTER, ATHENS,
AND ETX SUCCESSOR SYSTEM, F/K/A
EAST TEXAS MEDICAL CENTER
REGIONAL HEALTHCARE SYSTEM,
SHELLI MORRISON D/B/A THE
MORRISON LAW FIRM, CYPRESS
EMERGENCY ASSOCIATES, P.A. AND
NORTH CYPRESS MEDICAL CENTER
OPERATING COMPANY, LTD.

    **Defendants**

**CIVIL NO. 6:19-cv-00058-JDK-KNM**

**JURY TRIAL**

## PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

    **NOW COMES**, Maria V. Ruiz de Balderas and Jammie Shelton, Individually and on

Behalf of all Others Similarly Situated, and files this Third Amended Class Action Complaint

complaining of Defendants herein, ETX Successor Athens, F/K/A East Texas Medical Center,

Athens, ETX Successor System, F/K/A East Texas Medical Center Regional Healthcare

System, Shelli Morrison, D/B/A The Morrison Law Firm, Cypress Emergency Associates, P.A.,

and North Cypress Medical Center Operating Company, Ltd., and in support thereof would

respectfully show unto the Court and Jury the following:

## I.    INTRODUCTION

1.    Plaintiffs, Maria V. Ruiz de Balderas and Jammie Shelton, seek to certify a class action against Defendants ETX Successor Athens, F/K/A East Texas Medical Center Athens (ETX Athens), ETX Successor System, F/K/A East Texas Medical Center Regional Healthcare System, collectively or together (ETX), Shelli Morrison D/B/A The Morrison Law Firm (MORRISON), Cypress Emergency Associates, P.A. (CEA) and North Cypress Medical Center Operating Company, LTD. (NCMC) for violations of the Racketeering Influenced Corrupt Organizations ("RICO") Act[1], Texas Hospital Lien Statute[2], Chapter 146 of the Texas Civil Practices and Remedies Code[3], Texas Fraudulent Lien Statute[4], Federal Fair Debt Collection Practices Act[5] and the Texas Fair Debt Collection Practices Act[6].

2.    This case involves the fraudulent practice of ETX and NCMC hospitals' and ECA's placement and filing of unlawful and fraudulent liens against emergency room ("ER") patients who have been accident victims who may have potential personal injury claims against third parties, places illegal liens against them, and then hijacks the patients' personal injury claims through use of the liens in order to recover more than the reasonable and regular rate of its services[7].

3.    On information and belief, on or about January 1, 2016, Defendant ETX entered into an agreement with MORRISON in which MORRISON would file liens on behalf

---

[1] 18 U.S.C. § 1962.
[2] Tex. Prop. Code § 55
[3] Tex. Civ. Prac. & Rem. Code § 146.002 & 146.003
[4] Tex. Civ. Prac. & Rem. Code § 12.002.
[5] 15 U.S.C. § 1692
[6] Tex. Fin. Code. Ann. § 392.
[7] ETX and NCMC also claim right to personal injury claim funds pursuant to invalid and overreaching assignments of benefits embedded in their consent to treat forms which are many times executed by someone other than the patient and/or executed under duress.

ETX and head up collection efforts for the underlying charges of the liens against accident victims who were treated at its hospitals. On information and belief MORRISON, CEA and NCMC had a similar agreement the commencement of which is unknown at this time. At the direction of ETX, CEA and NCMC, MORRISON filed liens without regard to whether the accident victims were ever admitted into the hospitals (a requirement under Texas law)[8], whether the treatment or the charges for the treatment were necessary[9] or whether or not the accident victims had available health insurance. MORRISON, at the direction of ETX, CEA and NCMC filed and recorded said liens with the absolute knowledge that the liens were fraudulent and unlawful.

4.      Plaintiffs (and their rightful agents) justifiably relied on ETX, CEA, NCMC, MORRISON, their associates' and affiliates' fraudulent representations and omissions made pursuant to this scheme in that, among other things, Plaintiffs' attorneys that represented them on their claims with the insurers of the at fault person that caused their injuries were directed by ETX, CEA, NCMC and/or MORRISON that "any and all funds recovered from a liable third party shall not be disbursed prior to the resolution" of NCMC, CEA and/or ETX's lien.

5.      Based upon information and belief, ETX, CEA, NCMC, and MORRISON through certain Assignment and Assumption Agreements, used hospital liens and the overinflated bills to secure financing for all of its participant hospitals. ETX, CEA and NCMC pledged receivables related to the fraudulent liens in order to secure financing for major equipment purchases with various lenders. The fraudulent hospital liens filed against accident victims comprise a portion of the security for these financing arrangements, and a portion of the funds in repayment of the loans come from the extorted and unlawful liens. This constitutes

---

[8] See Tex. Prop. Code § 55.002
[9] See Tex. Health & Safety Code § 311.0025

the laundering of money through the Federal Reserve and U.S. Banking System, in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

6. Plaintiffs believe based upon the pattern and practice of the competition and growth of hospital systems and information derived from Defendant's UCC security agreement financing statements and other lawsuits where hospital systems are accused of abusing hospital liens to generate revenue for the financing of expensive medical equipment, such as MRIs (magnetic resonance imaging) and CTs (computerized tomography), that Defendants, ETX, CEA and NCMC have pledged their receivables, including the "chargemaster rates" amounts charged for Defendants' emergency room treatment and the liens filed on persons involved in motor vehicle accidents, to large national corporations that are in the business of loaning money to hospital systems for the purchase of hospital equipment. After adequate time for discovery plaintiffs expect to join these companies as defendants in the racketeering scheme alleged herein.

7. In support of the foregoing allegations Plaintiff Maria Balderas' bill from The Texas Medical Center, Athens indicates that Plaintiff's entire body was CT scanned for a total of five studies, billed at $3,627.75 each[10], for a total of $25,393.50. The bill also shows boldly on each page a rubber stamp indicating that "FIRST AND THIRD PARTY BENFITS ASSIGNED".

8. On information and belief ETX and MORRISON continued filing liens in the manner described above through April 17, 2018. On information and belief NCMC, CEA and MORRISON continue to file liens in the manner described above to this date. As a result of ETX, CEA, NCMC and MORRISON repeatedly engaging in this pattern of behavior, there are

_____

[10] Currently advertised at https://www.tmfhc.org/care-treatment/tests-imaging/ by Christus Trinity Mother Frances at a cash pay rate of $400.00 per scan.

estimated to be in excess of 6,000 victims similarly situated to Plaintiff. For reference, in 2015 (prior to the agreement between ETX and MORRISON) approximately 50 hospital liens were filed in Henderson County, Texas by or on behalf of ETX. For that same year the Texas Department of Public Safety reported approximately 500 automobile accident related injuries in Henderson County, Texas. In 2016 (the first year of the agreement between ETX and MORRISON), MORRISON filed in excess of 900 liens in Henderson County, Texas at the direction of ETX. For that same year the Texas Department of Public Safety reported approximately 700 automobile accident related injuries.

9.     Upon information and belief, ETX and NCMC hospitals and CEA knowingly created false liens against emergency room patients who have been in an accident attributable to third parties, who have minor injuries and were not admitted to the hospital. On information and belief, ETX, CEA NCMC and MORRISON filed hospital liens against every accident victims treated at the hospitals as a matter of course, not as a matter of right. ETX, CEA, NCMC and MORRISON filed liens against patients for the amount of inflated bills (known in the medical community as "chargemaster rates"), and transmitted fraudulent documents and demands through the mail and/or by wire via interstate facsimile and e-mail communications. Defendants' actions constitute fraud (including mail and wire fraud), racketeering, extortion, and unfair debt collection. Defendants' actions have caused Plaintiffs and the class to suffer financial injury and/or mental anguish or emotional distress.

## II.     PARTIES

10.     Plaintiff, MARIA V. RUIZ DE BALDERAS, is an adult female and is a resident of Anderson County, Texas.

11.     Plaintiff, Jammie Shelton, is an adult female and is a resident of Harris County,

Texas.

12.      Defendant, ETX SUCCESSOR ATHENS, F/K/A EAST TEXAS MEDICAL CENTER, ATHENS, is a domestic not for not for profit hospital, organized and existing under the Laws of the State of Texas, engaged in the business of providing hospital services for treatment of patient injuries sustained in accidents with its principal place of business located at 2000 S. Palestine St., Athens, Texas 75751.  Defendant ETX SUCCESSOR ATHENS, F/K/A EAST TEXAS MEDICAL CENTER, ATHENS, has made an appearance in this case.

13.      Defendant, ETX SUCCESSOR SYSTEM, F/K/A EAST TEXAS MEDICAL CENTER REGIONAL HEALTHCARE SYSTEM, is a domestic not for profit hospital, organized and existing under the Laws of the State of Texas, engaged in the business of providing hospital services for treatment of patient injuries sustained in accidents with its principal place of business located in Tyler, Texas. Defendant ETX SUCCESSOR SYSTEM, F/K/A EAST TEXAS MEDICAL CENTER REGIONAL HEALTHCARE SYSTEM, has made an appearance in this case.

14.      Defendant, Shelli Morrison, D/B/A The Morrison Law Firm, is an individual who is a resident of Henderson County Texas.  She may be served at her business address at: 120 E. Corsicana St., Athens, Texas 75751.

15.      Defendant, Cypress Emergency Associates, P.A. is a Professional Association of physicians organized and existing under the Laws of the State of Texas, engaged in the business of providing emergency physician services and Defendants ETX and NCMC's hospitals with its principal place of business located in Houston, Texas.  Service of process on said Defendant may be affected by serving a true copy of the citation with a copy of the complaint attached thereto on said Defendant's registered agent for service of process,

Mounang Desai, at 6003 Isla Vista Ct., Houston, Texas 77041.

16.     Defendant, North Cypress Medical Center Operating Company, LTD., is a Texas Domestic Limited Partnership organized and existing under the Laws of the State of Texas, engaged in the business of providing hospital services for treatment of patient injuries sustained in accidents with its principal place of business located in Cypress, Texas. Service of process on said Defendant may be affected by serving a true copy of the citation with a copy of the complaint attached thereto on said Defendant's registered agent for service of process, J. Douglas Sutter, at 3050 Post Oak Blvd., Suite 200, Houston, Texas 77056.

## III.     JURISDICTION AND VENUE

17.     This is a civil action arising under 18 U.S.C §§ 1962 and 1964(c) of the Racketeering Influenced and Corrupt Organizations Act. As such, the Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of all state claims asserted herein pursuant to 28 U.S.C. § 1367.

18.     Venue is proper in this Court because Defendants ETX ATHENS and ETX SYSTIEM transact their affairs in this District. 18 U.S.C. § 1965. Venue is likewise proper in this district under 28 U.S.C. § 1391(b)(1) Defendants ETX ATHENS and ETX SYSTEM maintain their principal place of business in this District.

## IV.     FACTUAL BASIS OF CLAIM

19.     On or about May 22, 2016, Plaintiffs, Maria V. Ruiz de Balderas and her son, Adam Ruiz, a minor, were involved in a motor vehicle collision. Plaintiff presented and was treated in ETX's emergency room.  Plaintiff produced a valid group health insurance card issued by her employer, Wal-Mart, an ERISA plan, managed by Blue Cross Blue Shield.

20.	On June 15, 2016, MORRISON, on behalf of ETX, filed a hospital lien in the amount of $29,406.75 in the Henderson County, Texas deed records Clerk's File Recording Number 2016-00008155. On information and belief the lien was forwarded by MORRISON to the Henderson County Clerk via the United States Postal Service.

21.	Thereafter, on information and belief, MORRISON sent a letter to Plaintiff notifying her that it was placing a lien in the amount of the hospital bill ($29,406.75) against her.

22.	Sometime after her accident in the year 2016, Plaintiff hired an attorney to file a personal injury claim against the party responsible for the motor vehicle accident. Using the U.S. Postal Service and interstate wires, Defendant and its associates began and continued to repeatedly contact Plaintiffs and Plaintiff's personal injury counsel through various means of communication including U.S. mail, telephone calls, and e-mail transmissions, in an attempt to interfere in the settlement process and collect upon their fraudulent lien.

23.	On or about March 30, 2018, Plaintiff, Jammie Shelton, was in an automobile accident. She was taken to NCMC via a neighbor and treated at NCMC's emergency room for neck pain by CEA physicians. She presented a valid Aetna group health insurance card which was not accepted. She was asked to provide her personal auto policy information with Geico. The total of the charges for the emergency room services was $8,402.00 that included two CT scans at a rate in excess of $3,000.00 per scan and CEA's charges for their services was $1,691.00. MORRISON on behalf of NCMC and CEA filed a hospital lien in the Harris County Public Records on April 18, 2018. Ultimately, MORRISON, via threats of legal action, recovered $2,501.00 from Plaintiff's personal injury protection. Plaintiff, Jammie Shelton has been unable to resolve her case as a result of the lien.

24.      On information and belief MORRISON, ETX, CEA and NCMC engaged in a scheme of defrauding automobile accident victims that presented in ETX and NCMC emergency rooms. Defendants engaged in a pattern and practice of evaluating each and every patient that presented at the emergency room to determine if the injuries sustained were accident related. If the patient's injuries were accident related, ETX, CEA and NCMC would over-treat the patient and decline to pursue any other avenue of payment other than attempting to secure payment by the enforcement of a hospital lien. The pattern and practice rose to the level of civil conspiracy.

25.      On information and belief, if the patient had commercial health insurance, ETX, CEA and NCMC would decline to accept the coverage. Plaintiff, Ruiz de Balderas produced her card as proof of her health insurance with an approved ERISA plan via her employment with Wal-Mart to ETX.

26.      On information and belief, no patients were ever evaluated to determine if they qualified for reduced or free care under ETX's Financial Assistance Policy.[11]

27.      On information and belief, if the patient was a Medicare beneficiary, ETX, CEA and NCMC would file a lien and not bill Medicare.

28.      On information and belief, if the patient was a Medicaid recipient, ETX, CEA and NCMC would decline to seek reimbursement from Medicaid until efforts to collect from a third party tortfeasor or their insurer were exhausted. In those cases where ETX, CEA and NCMC were successful in collecting from a third party torfeasor or their insurer, ETX, CEA and NCMC would retain the amounts in excess of the amount Medicaid would otherwise have

---

[11] ETX purports to qualify as a tax exempt entity under pursuant to 26 U.S.C. § 501(c)(3). To qualify, ETX is required to develop a Financial Assistance Policy. Charges made to patients who qualify for assistance under the policy must be not more than the amounts generally billed to individuals who have insurance covering such care, and prohibits the use of gross charges. 26 U.S.C. § 501(r)(5). Plaintiffs assert this also is a federal question in support of jurisdiction.

paid, without establishing their right to payment separate from the recipients claim and would not obtain the settlements or awards in their own name separate from the recipients or pursuant to an agreement with the recipients attorney, all in violation of Medicaid law[12].

***The Texas Hospital Lien Statute***

29.     Texas Property Code Section 55.002 provides a hospital and the treating physician with a procedure to collect payment for certain services through a lien on an individual's cause of action or claim against a third party. Tᴇx. Pʀᴏᴘ. Cᴏᴅᴇ Aɴɴ. § 55.002 (West 2015). Once a lien is filed and recorded in the county clerk's office, statutory notice must be given to the patient that any claim or cause of action against a third party for their injuries is subject to the lien and cannot be settled or resolved without first satisfying the lien. *Id.* §§ 55.005; 55.007.  Often the notice is not given, or is filed months after an MVA, creating an assumption that the automobile accident victim's insurance has been billed.

30.     A hospital lien is authorized, however, only when the individual is "admitted" to the hospital for inpatient treatment:

> A hospital has a lien on a cause of action or claim of an individual who receives hospital services for injuries caused by an accident that is attributed to the negligence of another person. For the lien to attach, the individual must be *admitted to a hospital not later than 72 hours after the accident.*

Tᴇx. Pʀᴏᴘ. Cᴏᴅᴇ Aɴɴ. § 55.002(a) (West 2015) (emphasis added).

***ETX's, CEA'S and NCMC's Scheme to Defraud Patients***

31.     On information and belief, ETX and NCMC emergency rooms are leased out with contract emergency room physicians with no authority to admit patients to the hospital.

32.     On information and belief, ETX, CEA and NCMC had or have agreements with

---

[12] See Tex. Admin. Code § 354.2322.

MORRISON to file fraudulent hospital liens. The illegal agreements are to intercept and collect overpriced hospital facility services provided by ETX and NCMC hospitals and CEA to accident victims, who are not seriously injured enough for admission into the hospital. ETX, CEA and NCMC, through MORRISON, uses the fraudulent hospital liens to defraud and extort money from accident victims, attorneys that represent accident victims, and third party automobile insurance companies, who are unable to settle or resolve personal injury actions until the liens are satisfied or released.

33.     For example, upon information and belief, ETX, CEA and NCMC employees screen and identify: (1) whether patients qualify for federal programs such as Medicaid and Medicare; (2) whether they are insured under managed-care contracts the hospital has with third parties, such as Blue Cross; or (3) whether the person has first or third party coverage under an auto policy. If the patient has a potential third party liability claim, these employees do not bill Medicaid, Medicare, or a health insurance company, who pay for the same services. Instead, they file a hospital lien against the patient and attempt to collect the full amount, all the while knowing the patient was not admitted into the hospital for medical treatment as required by Chapter 55 of the Texas Property Code. Tex. Prop. Code Ann. § 55 (West 2015).

### Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343)

34.     ETX, CEA, NCMC and MORRISON engaged in a scheme to unlawfully obtain Plaintiffs' money and property and the money and property of others similarly situated. ETX, CEA and NCMC knowingly devised or knowingly participated in a scheme or artifice to defraud Plaintiffs and others similarly situated or to obtain the money or property of Plaintiffs' and others similarly situated by means of false or fraudulent pretenses, representations,

promises or omissions[13].

35.     ETX, CEA, NCMC  and MORRISON knew, overtly participated in and expected that the U.S. Postal Service and interstate wires would be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in or carrying out the scheme, within the meaning of 18 U.S.C. §§ 1341 and 1343.

36.     In particular, ETX, CEA, NCMC and MORRISON knew or could foresee that the U.S. Postal Service and interstate wires would be used to receive and/or deliver, *inter alia*, communications for the purpose of generating money due to over-treating and overbilling[14] Plaintiffs and others similarly situated and then for using the fraudulently recorded hospital lien to defraud and extort money from Plaintiffs' personal injury claim against the third party and the personal injury claims of others similarly situated.  Each call, fax, and e-mail constituted a demand for payment of the lien amount. The communications contained fraudulent misrepresentations and extortionate demands, on which Plaintiffs and others similarly situated relied to their detriment by acquiescing in the unlawful collection activity and paying cash to obtain a release of the fraudulently recorded hospital lien or by acquiescing to not disburse any amounts recovered until the liens were satisfied, either individually or through a representative presented with the lien.

37.     ETX, CEA, NCMC and MORRISON acting alone and in concert, personally or through its agents, used the U.S. Postal Service and interstate wires or caused the U.S. Postal Service or interstate wires to be used "for the purpose of" advancing, furthering, executing,

---

[13] ETX Successor Athens' records fraudulently state that she assigned health insurance and that it would be billed.

[14] A practice that is in violation of § 311.0025(a) of the Texas Health and Safety Code.  This section provides for an audit of the medical provider's billings in the event of a complaint against the provider to the appropriate licensing agency.  The convenience of the Defendants' refusal to accept any sort of health coverage is the average patient is most likely unaware of this provision and assumes that billing complaints should be directed at the provider themselves.

concealing, conducting, participating in, or carrying out a scheme to defraud Plaintiffs and others similarly situated, within the meaning of 18 U.S.C. §§ 1341 and 1343.

38.     Upon information and belief, some of the wire communications described above occurred between persons in the same state but crossed interstate borders by reason of the technology and other mechanisms used to transmit the communication.

39.     Each and every use of the U.S. Postal Service or interstate wires described above was committed by ETX, CEA and NCMC, through MORRISON, with the specific intent to defraud the Plaintiffs and others similarly situated or for obtaining the money or property of Plaintiffs and others similarly situated by means of false or fraudulent pretenses, representations, or promises. ETX, CEA, NCMC and MORRISON's acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 constitute racketeering activity as defined by 18 U.S.C.§ 1961(1)(B).

40.     Plaintiffs and others similarly situated justifiably relied on ETX, CEA, NCMC and MORRISON's fraudulent representations and omissions made pursuant to the above-described scheme in that, among other things, Plaintiffs and others similarly situated involuntarily paid or agreed to pay amounts demanded to release the lien, to allow his personal injury claim to settle or have complied with demands to not disburse any proceeds until the liens were satisfied.

41.     Through their coercive collection activities, using the U.S. Postal Service and interstate wires, ETX, CEA and NCMC wrongfully appropriated funds rightfully belonging to Plaintiffs and others similarly situated through the use of fraud, extortion, coercion, and instilling a fear of economic injury.

42.     ETX's, CEA's and NCMC's collection activities threatened serious economic

harm to Plaintiffs.

43.    ETX, CEA, NCMC and MORRISON engaged in the following acts forming the factual basis of Plaintiffs' claims for relief herein:

a.   Fraudulently claiming that the amount of the debt due was for emergency room services was the reasonable and regular rate for such services as required to maintain a hospital lien against Plaintiffs' third-party personal injury claim.

b.   Fraudulently claiming entitlement to a lien against Plaintiffs' third-party personal injury claim, where Plaintiff' were never admitted to the hospital as required by the hospital lien statute;

c.   Fraudulently misrepresenting ETX's, CEA's and NCMC's right to prevent settlement of Plaintiffs' third-party personal injury claim based on the hospital lien, where ETX, CES and NCMC had no right to file the hospital lien as Plaintiffs were not admitted to the hospital within 72 hours after the accident causing his injuries, and claiming the lien was for the "reasonable and regular" rate when it was not;

d.   Deceptive acts and practices by fraudulently misrepresenting that a debt in the amount claimed was in fact due, and filing the hospital lien filed against Plaintiffs and their third-party personal injury claim, preventing Plaintiffs from settling said third-party claim, to extort sums from Plaintiffs that the Hospital was not legally entitled to collect through the use of the lien;

e.   Filing a fraudulent hospital lien, and using the mail and wires, intending to generate money for continuing the scheme to extort from Plaintiffs' third-

party personal injury claim.

    f.   Fraudulently failed to bill Plaintiffs' health insurance, if presented, as promised.

***Continuing pattern or practice***

44.    Upon information and belief, ETX, CEA and NCMC operate and manage their business arrangement with MORRISON to fraudulently file hospital liens against patients of the ETX and NCMC hospitals who had been involved in accidents but who were seen only in the emergency room and who were never actually admitted into the hospital. ETX, CEA, NCMC and MORRISON, accomplished this scheme though the use of the mail and interstate wires via facsimile transmission, and all shared in the profits of this criminal enterprise.

45.    Plaintiffs sustained financial injury to their property as a result of the organized, systematic acts of racketeering and use of extortion of converting false hospital liens into US currency.

## V.    THE CLASS OF CLAIMS OF THOSE SIMILARLY SITUATED AND PROPOSED TO BE REPRESENTED BY PLAINTIFF

46.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure Plaintiffs Maria V. Ruiz De Balderas and Jammie Shelton bring this action on behalf of themselves and all others similarly situated, as representative of the following class:

> All persons who received emergency room hospital services and/or emergency medical services (EMS) from an ETX or NCMC owned, leased and/or managed hospital located within the State of Texas who were involved in an accident, but were not admitted to the hospital within 72 hours of the accident for which the patient sought emergency medical services , and/or presented valid commercial health insurance coverage that was refused, and/or were over-treated and overbilled, and/or charged unreasonable rates and against whom ETX, CEA or NCMC filed a hospital lien and whose claims against any third party's insurer have been settled.

47.    Plaintiffs re-allege and re-plead all of the material allegations set forth in paragraphs 1 through 45 and paragraphs 63 to 91, and incorporates the same by reference as if fully set forth herein.

48.    As previously demonstrated herein, ETX, CEA and NCMC indiscriminately file hospital liens against accident victims and their potential third party personal injury claims in violation of Chapter 55 of the Texas Property Code with the intent to cause financial injury to those victims of accidents who are only seen in the emergency room department of its hospitals and who are not admitted into the hospital as an inpatient within 72 hours of the accident. These actions are prohibited by Chapter 12 of the Texas Civil Practices & Remedies Code, § 12.002, et seq. *See, infra* Count Two.

49.    This identical fact pattern of fraudulent activity is played out hundreds of times each day, each month and each year by ETX, CEA, NCMC and related hospitals throughout the State of Texas.

50.    These individuals of the proposed class are harmed by and subject to victimization by ETX, CEA, NCMC and other hospitals that seek to and have extort[ed] funds from their personal injury settlements that these hospitals are not legally entitled to collect from.

51.    Plaintiffs, and others similarly situated, as set forth herein are victims of this pattern of fraud and have sustained damages as a direct and proximate cause of the filing of these fraudulent hospital liens. The damages for each class member are identical as each proposed class member is entitled to receive as compensation for their damages $10,000.00 per violation for the filing of a fraudulent hospital lien or fraudulent claim, attorney's fees, and

costs of suit and exemplary damages to be determined by the Court pursuant to T<sub>EX</sub>. C<sub>IV</sub>. P<sub>RAC</sub>. & R<sub>EM</sub>. C<sub>ODE</sub> § 12.002(b).

52.     As described below, this action satisfies the prerequisites of numerosity, commonality, typicality, and adequacy of representation required by Rule 23(a)(1),(2),(3) and (4) of the Federal Rules of Civil Procedure. Additionally, class certification of the proposed class format is superior to other methods of adjudication and meets the four factors necessary to make that determination as set forth herein.

### *FRCP 23(a)(1) - Numerosity:*

53.     The proposed class members are located throughout the State of Texas and certain other non-resident class members from other states who were involved in an accident in Texas and who had visited a hospital emergency room without being admitted to the hospital.

*54.*     The persons in the proposed class are so numerous that joinder of all members is impracticable. Although the exact number of class members is unknown to Plaintiff at this time, it is anticipated that the class is composed of at least 6,000 members or more. This estimate of the number of potential class members is based upon the real property records maintained by the various county clerks throughout the State of Texas where the hospital lien filings are made.

### *23(a)(2) - Commonality:*

55.     There are issues of law and fact common to the class. The common issues of law and fact which control the outcome in each individual class member's TCPRC Chapter 12 Fraudulent Hospital Line case are:

***Common Questions of Fact:***

a. Did ETX and NCMC owned and managed hospitals located in Texas and CEA file hospital liens against accident victims who had only been seen in the emergency department of the hospital and who were not admitted into the hospital within 72 hours of the accident with the intent to cause financial injury to said accident victims by attempting to collect more than the reasonable and regular rate for the hospital services provided?

b. Did ETX, CEA and NCMC provide services to accident victims that they knew were improper, unreasonable, or medically or clinically unnecessary in order to increase their potential recovery from a third party's liability insurer?

c. Did ETX, CEA and NCMC refuse to accept accident victim's health insurance coverage in violation of Chapter 146 of the Texas Civil Practices and Remedies Code?

**Common Questions of Law**

d. Does the filing of a hospital lien against an accident victim where the accident victim was not admitted into the hospital within 72 hours of the accident violate Chapter 55 of the Texas Hospital Lien Statute?

e. Does the filing of a hospital lien against an accident victim for charges for services that were improper, unreasonable, or medically or clinically unnecessary violate Chapter 55 of the Texas Hospital Lien Statute?

f. Does the filing of a fraudulent hospital lien with the intent to cause financial injury violate Chapter 12 of the Texas Civil Practices & Remedies Code?

**_FRCP 23(a)(3) - Typicality:_**

56. Plaintiffs' claims are not only typical of the proposed class members but their claims are identical to each member of the proposed class and the damage model for violation of the Texas Fraudulent Lien Statute – statutory damages of $10,000.00 per violation is likewise identical.

57. ETX, CEA, NCMC and MORRISON engaged in a fraudulent business plan or model to target victims of accidents who had only been seen in the emergency department of ETX and NCMC hospitals. ETX, CEA and NCMC practice this fraud upon each and every

emergency room visitor who reports injury due to an accident. Once ETX, CEA and NCMC learns that their emergency room patient was involved in an accident, ETX, CEA and NCMC immediately begin the process of providing overpriced trauma related diagnostic protocols and taking those exorbitant rates to extort funds from the victims' personal injury settlement that ETX, CEA nor NCMC are legally entitled to collect by use of a fraudulent hospital lien. The issue of law and fact relating to ETX's, CEA's and NCMC's conduct and the issues of law are identical for each Chapter 12 claim for each member of the proposed class. Therefore, the typicality requirement of Rule 23(a)(3) is satisfied. Fed. R. Civ. P. 23(a)(3).

### *FRCP 23(b)(3) - Predominance:*

58.     The common questions of fact and legal issues applicable to each individual member of the proposed class are identical. The predominate factual and legal issues are whether or not a hospital can file a hospital lien to collect for hospital services and physician services provided an accident victim who was not admitted into the hospital within 72 hours of the accident, whether a hospital can file a lien to collect for hospital services and physician services provided to an accident victim that were improper, unreasonable, or medically or clinically unnecessary, whether a hospital or physician can refuse to accept valid commercial health insurance coverage and instead elect to file a lien against an accident victim's cause of action in an effort to collect amounts in excess of their negotiated rates with the insurer and whether or not the Texas Hospital Lien Statute limits the amount of reimbursement for hospital and physician services provided to an accident victim that exceed the "reasonable and regular rate" limitations of the Texas Hospital Lien Statute. All of the proposed class members are governed by the same legal rules, the determination of which would either bring a swift conclusion to the claims of all the proposed class members or result in the award of statutory

damages of $10,000.00 per violation, attorney fees, costs, and exemplary damages to be determined by the Court.

59.     The prosecution of separate suits or MDLs in different counties within the State of Texas by individual members of the proposed class would create a risk of inconsistent adjudication of the legal issues with respect to individual members of the class, and would establish incompatible standards of conduct for any party opposing the class. Common questions of law or fact predominate over any questions affecting only individual class members; therefore, the requirement of Rule 23(b)(3) that the common questions of law or fact predominate over questions affecting only individual members of the class is satisfied. Fed. R. Civ. P. 23(b)(3).

*FRCP 23(b)(3) – Superiority:*

60.     The proposed fraudulent hospital lien litigation class format in this case is superior to any other available method for the fair and efficient adjudication of this controversy. The class members interests in individually controlling their separate actions is outweighed by the efficiency of having this Court determine the federal question of the meaning of the term admission as it relates to hospitals and the Texas Hospital Lien Statute under CMS guidelines and regulations, which in turn would avoid inconsistent rulings and litigation costs for each individual member which could exceed the value of the class member's separate claims; or alternatively prohibit the filing of a separate action based upon a risk reward economic feasibility analysis. The controlling legal issue that predominates each individual proposed class member's case applies to all accident victims within the State of Texas, not solely those victims damaged by ETX's, CEA's and NCMC's actions. The resolution and/or termination of the proposed class litigation is a federal question, and this

Court is therefore the most desirable forum for litigation regarding the class for want of efficiency and judicial economy. Lastly, there are no foreseeable difficulties in management of the proposed class that would outweigh or overwhelm the efficiencies that could be secured though class wide adjudication for the reason that the damage model for each member of the class is identical: statutory damages per violation and the exemplary damages recoverable are to be determined by the Court and not the jury. Therefore, the class action device is superior to any other method of adjudication presently pending or which could be asserted on an individual class member basis.

### *FRCP 23(a)(4) - Adequacy of Representation:*

61.     Plaintiffs will fairly and adequately represent the interest of the class. In support of this proposition, Plaintiffs would show that:

a. Plaintiffs are a member of the proposed class;
b. Plaintiffs are interested in representing the proposed class;
c. Plaintiffs, through counsel, are willing to pay the costs of notice and litigation;
d. Plaintiffs have no interest adverse to other members of the proposed class; and
e. Plaintiffs have suffered the same harm as the proposed class.

62.     Plaintiffs and their counsel will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiffs have no claims antagonistic to those of the Class.

## VI.     COUNT ONE

### RICO – 18 U.S.C. § 1962(c)

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

63. Plaintiffs re-allege and restate paragraphs 1 through 62.

64. Plaintiffs are "person"s within meaning of 18 U.S.C. § 1961(3) and §1964(c).

65. ETX acting with MORRISON and NCMC and CEA acting with MORRISON both constitute "enterprises," within the meaning of 18U.S.C. §§ 1961(4) & 1962(c), in that each was "a group of individuals associated in fact" (hereinafter referred to as the "Fraudulent Hospital Billing Enterprise"):

    a.   ETX acting with MORRISON, and NCMC and CEA acting with MORRISON shared the common purpose of (among other things) over-treating and over charging persons, such as Plaintiffs, injured in accidents caused by third parties, then using fraudulent hospital liens to defraud Plaintiffs, and others similarly situated, of money or property;

    b.   ETX acting with MORRISON, and NCMC and CEA acting with MORRISON were related in that MORRISON contracted with ETX, CEA and NCMC to file and collect on hospital liens on behalf of ETX's and NCMC's hospitals and CEA's physicians against third party personal injury claims.

    c.   The Fraudulent Hospital Billing Enterprise possessed sufficient longevity for the members to carry out their purpose(s) in that the Fraudulent Hospital Billing Enterprise has existed in excess of three years.

66. ETX, CEA, NCMC and MORRISON are "persons," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually conducted, participated in, engaged in, and operated and managed the affairs of the Fraudulent Hospital Billing Enterprise through a

pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Said pattern of racketeering activity consisted of, but was not limited to, the acts mail and wire fraud previously described .

67.     In the alternative, MORRISON as an individual doing business as a law firm constituted an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c). ETX, CEA, NCMC and MORRISON are "persons," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually conducted, participated in, engaged in, and operated and managed the affairs of MORRISON, through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Said pattern of racketeering activity consisted of, but was not limited to, the acts of mail and wire fraud previously described.

68.     Defendant or its agents have caused the transmission of fraudulent documents and demands through the mail and/or by wire via interstate facsimile and e-mail communications. Such actions:

        a.      Constituted a scheme to defraud conducted through the mails and/or over wire transmissions;

        b.      With the intent to defraud the Plaintiffs and similarly situated members of the public; and

        c.      Defendant did in fact mail and/or transmit by wire interstate materials in furtherance of this scheme.

69.     At all relevant times, the enterprises previously alleged were engaged in, and their activities affected, interstate commerce and foreign commerce.

70.     All acts of racketeering previously described were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in that their

common purpose was to defraud Plaintiffs of money and property, their common result was to defraud Plaintiffs of money and property; ETX. CEA and NCMC personally or through their agent or agents, including MORRISON, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; Plaintiffs and others similarly situated were the victims of the acts of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

71.      All acts of racketeering previously described were continuous so as to form a pattern of racketeering activity in that ETX, CEA, NCMC and MORRISON engaged in the predicate acts over a substantial period of time or in that ETX's, CEA's and NCMC's acts of racketeering, through MORRISON, constitute regular way in which it did business and threatens to continue indefinitely.

72.      As a direct and proximate result of, and by reason of, the activities of ETX, CEA, NCMC and MORRISON and their conduct in violation of 18 U.S.C. § 1962(c), Plaintiffs were injured in their business and/or personal property, within the meaning of 18 U.S.C. § 1964(c). Among other things, Plaintiffs suffered damages to the extent their personal injury recoveries have been held up by the fraudulent demands for satisfaction of the fraudulent hospital lien. Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

VII.    **COUNT TWO**

Fraudulent liens – T~EX~. C~IV~. P~RAC~. & R~EM~. C~ODE~ § 12.002

(a)  A person may not make, present, or use a document or other record with:
    (1)  knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or

personal property;

    (2)  intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

    (3)  intent to cause another person to suffer:

        (A)  physical injury;

        (B)  financial injury; or

        (C)  mental anguish or emotional distress.

73.     Plaintiff re-alleges and restates paragraphs 1 through 72.

74.     ETX, CEA, NCMC and MORRISON directly and through their agents, made, presented, or used a hospital lien, filed said lien with the County Clerks' office of various Texas Counties, with knowledge that the lien was a fraudulent lien or claim against real or personal property or an interest in real or personal property.

75.     ETX, CEA, NCMC and MORRISON intended the lien be given legal effect under Texas law, evidencing a valid lien or claim against real or personal property or an interest in real or personal property. ETX, CEA, NCMC and MORRISON intended to cause Plaintiffs to suffer financial injury and/or mental anguish or emotional distress.

76.     Plaintiffs suffered actual damages. ETX, CEA, NCMC and MORRISON are liable to Plaintiffs for the greater of greater of: (A) $10,000; or (B) Plaintiffs' actual damages caused by the violation. ETX, CEA, NCMC and MORRISON are further liable for court costs, reasonable attorney's fees, and exemplary damages in an amount determined by the court.

## VIII.   COUNT THREE

### Unfair Debt Collection Practices

### COMMON LAW UNFAIR DEBT COLLECTION

77.     Plaintiffs re-allege and restates paragraphs 1 through 76.

78.     Defendants are liable to Plaintiffs, under Texas Finance Code, § 392.301 *et. seq.*,

by reason of Defendant's misrepresentations and violations of Texas Finance Code, Section 392.304(a). Defendant used "fraudulent, deceptive, or misleading representations" that employed "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding" and "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." T$_{\text{EX.}}$ F$_{\text{IN.}}$ C$_{\text{ODE}}$A$_{\text{NN.}}$ § 392.304 (West 2015).

79.    Defendants' actions constitute unfair debt collection under the common law of Texas. Specifically, Defendants sought to collect and did collect a debt that did not exist because Defendants intentionally and fraudulently misrepresented the amount of debt due and Defendants' right to withhold approval of settlement of Plaintiffs' personal injury claim by filing a hospital lien asserting that the ER visit was an admission to the hospital. By their fraudulent use of the hospital lien to extort charges for hospital services that were unnecessary and exceeded the reasonable and regular rate for such services, Defendants' actions were committed knowingly, intentionally, with the sole purpose of causing financial injury to Plaintiffs through harassment, intimidation and to maliciously extort sums of money that Defendants were not legally entitled to collect.

80.    Defendants' actions caused the Plaintiffs to suffer mental anguish. These damages sustained by Plaintiffs were reasonably foreseeable by Defendants.

81.    Plaintiffs are also entitled to exemplary damages against Defendant. Defendants' fraudulent use of the Texas Hospital Lien Statute to collect a debt that was not legally due and exceeded the amount of any purported debt that could have been collected was intentional and malicious. Furthermore, Defendants' acts of debt collection, use of the fraudulent hospital lien and efforts subsequent to the filing of the hospital lien, were done intentionally and

maliciously.

## TEXAS FAIR DEBT COLLECTION PRACTICES ACT

82. Defendants' actions violate the Texas Fair Debt Collection Practices Act ("TFDCPA"). Under the TFDCPA, the debt at issue in this case is a "consumer debt," and Defendants are "debt collectors." T$_{EX}$. F$_{IN}$. C$_{ODE}$ A$_{NN}$. § 392.001 (West 2015). Defendant misrepresented the character, extent, and amount of the alleged debt owed by Plaintiffs, if any, for hospital services provide as previously set forth herein. Defendants state in correspondence sent to Plaintiffs and the Class to be certified that their intent is to "collect a debt."

83. Plaintiffs are also entitled to exemplary damages against Defendants. Defendants' concealment of the true nature of any alleged debt due for hospital services provided and the amount thereof and its fraudulent use of the enforcement powers of the Hospital Lien was intentional and malicious. Furthermore, Defendants' debt collection activities of collecting more than four (4) times the amount of any debt for the actual necessary and reasonable negotiated rates for hospital services provided subsequent to the filing of the hospital lien was done intentionally, knowingly and maliciously.

84. Plaintiffs are entitled to statutorily mandated damages against Defendants.

85. Defendants authorized and encouraged its employees, agents and affiliates to carry out this malicious and egregious course of action.

86. Defendants are liable to Plaintiffs pursuant to the provisions of the Texas Finance Code Section 392.301 et seq., for actual damages, exemplary damages, attorney fees, and costs.

## FEDRAL FAIR DEBT COLLECTION PRACTICES ACT

87. Defendants' actions violate the Federal Fair Debt Collection Practices Act ("FFDCPA"). Under the FFDCPA, the debt at issue in this case is a "consumer debt," and Defendants are "debt collectors." 28 U.S.C. § 1692a. Defendant misrepresented the character, extent, and amount of the alleged debt owed by Plaintiffs, if any, for hospital services provide as previously set forth herein. The Defendants state in correspondence sent to Plaintiffs and the Class to be certified that their intent is to "collect a debt."

88. Defendants authorized and encouraged its employees, agents and affiliates to carry out this malicious and egregious course of action.

89. Defendants are liable to Plaintiffs pursuant to the provisions of the 18 U.S.C. § 1692k(a) for actual damages, additional damages up $1,000.00 or, in the case of class damages, the lesser of $500,000 or 1 percent of the Defendant's net worth, attorney fees, and costs.

## IX.    COUNT FOUR

## CIVIL CONSPIRACY

90. Plaintiffs reallege and restate paragraphs 1 through 89.

91. Pleading further and in the alternative, the Defendants have entered into a civil conspiracy with each other and have agreed to use unlawful means to accomplish an unlawful purpose to Plaintiffs' detriment. Defendants were each a member of a combination of two or more persons. The object of their combination was to accomplish an unlawful purpose, in particular the overtreatment and inflated billing of patients and the filing of and collection therefrom of fraudulent hospital liens. Defendants had a meeting of the minds and each committed unlawful acts in order to further the conspiracy. Plaintiffs were and continue to be damaged as a direct and proximate result of the civil conspiracy between and by and amongst

all the Defendants.  As a result of their conspiracy, Plaintiffs have been damaged.  Plaintiffs seek recovery of these damages from the Defendants, jointly and severally.

## X.  DAMAGES

92.    Plaintiffs requests that they obtain against Defendants, a judgment in a sum within the jurisdictional limits of the court, treble damages, exemplary damages, statutory damages, attorney's fees, and costs of suit.

93.    Plaintiffs seek judgment for damages as set forth below damages against Defendant for each violation of Chapter 12 of the Texas Civil Practices & Remedies Code as set forth herein:

    a.  Pursuant to T$_{EX}$. C$_{IV}$. P$_{RAC}$. & R$_{EM}$. C$_{ODE}$ § 12.002(b)(1)(A) and (B), Plaintiffs are entitled to recover statutory damages the greater of $10,000.00 for each violation of the act committed by Defendant in filing a fraudulent hospital lien and fraudulent court document, and for each attempt by Defendants to collect on the fraudulent lien through U.S. mail, email, facsimile, or telephone calls, or the actual damages caused by Defendant conduct alleged herein;

    b.  Pursuant to T$_{EX}$. C$_{IV}$. P$_{RAC}$. & R$_{EM}$. C$_{ODE}$ § 12.002(b)(3), Plaintiffs are entitled to recover reasonable and necessary attorney fees;

    c.  Pursuant to T$_{EX}$. C$_{IV}$. P$_{RAC}$. & R$_{EM}$. C$_{ODE}$ § 12.002(b)(2), court costs, including investigative fees; and,

94.    Pursuant to T$_{EX}$. C$_{IV}$. P$_{RAC}$. & R$_{EM}$. C$_{ODE}$ § 12.002(b)(4), Plaintiffs are entitled to recover exemplary damages in an amount to be determined by the Court.  Plaintiffs' damages are within the jurisdictional limits of this Court for which they now sue.

95.     Plaintiffs further seek judgment for damages for each violation of other state and federal law alleged herein up to the maximum allowed.

## XI.     PRE-JUDGMENT AND POST-JUDGMENT INTEREST

96.     Plaintiffs seek pre-judgment and post-judgment interest as allowed by law.

## XII.     JURY DEMAND

97.     Plaintiffs request a trial by jury for all issues of fact. A jury fee has been paid timely and properly.

## XIII.     PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that Defendants be cited to appear and answer herein, that this cause be set for trial before a jury, and that Plaintiffs have and recover judgment of and from the Defendants for their actual, compensatory, statutory and exemplary damages in such amount as the evidence may show and the jury may determine to be proper, together with pre-judgment interest, post-judgment interest, costs of suit, attorney fees and such other and further relief to which they may show themselves to be justly entitled. Plaintiffs further respectfully requests that the Court, after notice and hearing, certify the Fraudulent Hospital Lien Litigation Class and any appropriate subclasses, that the Court appoint class counsel for the Fraudulent Hospital Lien Litigation Class, and that upon final hearing, Plaintiff have judgment individually against Defendant din conformity with the Texas Fraudulent Lien Statute for: statutory damages, costs and exemplary damages, pre-judgment and post-judgment interests as provided by law, reasonable and necessary attorney's fees, costs of suit; and that Plaintiffs have judgment on behalf of all others similarly situated for damages in

conformity with the Texas Fraudulent Lien Statute for: statutory damages, costs and exemplary damages, pre- and post-judgment interests as provided by law, reasonable and necessary attorney's fees, costs of suit, pre-judgment and post- judgment interests as provided by law, reasonable and necessary attorney's fees, costs of suit and all such other and further relief, both at law and in equity, to which Plaintiffs, and all others similarly situated, may be justly entitled.

Respectfully submitted,

By: /s/ Charles W. Nichols
  Charles W. Nichols
  Texas Bar No 14994200
  Email: cnichols@charleswnicholslaw.com
  Admitted before the United States District Court, Eastern District of Texas

By: /s/ Donald J. Larkin
  Donald J. Larkin
  Texas Bar No 24057702
  Email: donald@charleswnicholslaw.com
  Admitted before the United States District Court, Eastern District of Texas

  617 E. Lacy St.
  Palestine, TX 75801
  Tel. (903) 729-5104
  Fax. (903) 729-0347
  Attorneys for Plaintiffs
  **MARIA V. RUIZ DE BALDERAS AND JAMMIE SHELTON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMULARLY SITUATED**

**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff's First Amended Complaint was

served on all counsel of record in accordance with Fed. R. Civ. P. 5(d) on July 5, 2019 via the

Court's EFC filing service.


By:     /s/ Charles W. Nichols
        Charles W. Nichols