## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **MARIA V. RUIZ DE BALDERAS,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | **CASE NO. 6:19-CV-58-JDK-KNM** |
| **v.** | § | |
| | § | |
| **ETX SUCCESSOR ATHENS F/K/A** | § | |
| **EAST TEXAS MEDICAL CENTER** | § | |
| **ATHENS; MEDICAL** | § | |
| **REIMBURSEMENTS OF AMERICA,** | § | |
| **INC.; ETX SUCCESSOR SYSTEM** | § | |
| **F/K/A EAST TEXAS MEDICAL** | § | |
| **CENTER REGIONAL HEALTHCARE** | § | |
| **SYSTEM; AND SHELLI MORRISON** | § | |
| **D/B/A THE MORRISON LAW FIRM,** | § | |
| | § | |
| *Defendants.* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant Shelli Morrison d/b/a The Morrison Law Firm's ("Morrison") Motion to Dismiss (Doc. No. 31).[1] Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all of Plaintiff Maria Ruiz de Balderas' ("Balderas") claims against her. Having considered the motion, the parties' arguments, and the applicable law, the Court **RECOMMENDS GRANTING** Defendant's motion to dismiss.

## BACKGROUND

This case involves allegedly fraudulent liens filed against emergency room patients who visited Defendant hospitals around East Texas. Balderas brings this suit individually and on behalf

---

[1] Morrison's Motion to Dismiss is styled as directed to Plaintiffs' Third Amended Complaint. After the present motion was filed, Plaintiff filed her Fourth Amended Complaint. At a hearing on October 8, 2019, Morrison's counsel informed the Court that this motion should be considered as if directed toward the Fourth Amended Complaint. *See* Doc. No. 61 at 3.

of all others similarly situated against: ETX Successor Athens, f/k/a Easter Texas Medical Center, Athens; ETX Successor System, f/k/a East Texas Medical Center Regional Healthcare System; and Shelli Morrison, d/b/a The Morrison Law Firm. The live complaint, Balderas' Fourth Amended Class Action Complaint, was filed on October 2, 2019 (Doc. No. 57-1).

Balderas alleges that, as a matter of course, Defendant hospitals and Morrison, their attorney, filed liens against them before ever making claims with those patients' insurance companies. Balderas alleges violations of Texas and Federal law, claiming that Defendants: (i) knowingly filed fraudulent liens in violation of Texas Civil Practice & Remedies Code § 12.002; (ii) engaged in unfair debt collection practices in violation of the Texas Fair Debt Collection Practices Act; (iii) engaged in unfair debt collection practices in violation of the Federal Fair Debt Collection Practice Act; (iv) tortiously interfered with contractual relationships; and (v) were unjustly enriched. Doc. No. 57-1 ¶¶ 66-92.

Morrison filed the present motion to dismiss, asking the Court to dismiss all claims against her. Doc. No. 31. Balderas filed a response (Doc. No. 34).[2] Morrison filed a reply (Doc. No. 41).

## LEGAL STANDARD

Defendant Morrison seeks dismissal of all of Plaintiff's claims against her for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. 31 at 1. When considering a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Bustos v. Martini Club, Inc*., 599 F.3d 458, 461 (5th Cir. 2010); *Ballard v. Wall*, 413 F.3d 510, 514 (5th Cir. 2005).

---

[2] After the Court's October 8, 2019 hearing, Plaintiff was given seven days to respond to Morrison's motion to dismiss. Rather than file a new response, Plaintiff notified the Court that she rested on her prior response.

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a complaint must include facts that "raise a right to relief above the speculative level," and into the "realm of plausible liability." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Although detailed factual allegations are not necessary, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not "suffice if it tenders 'naked assertions' devoid of further factual enhancement." *Id.* (quoting *Twombly,* 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

## ANALYSIS

Defendant Morrison moves to dismiss all claims against her pursuant to Federal Rule of Civil Procedure 12(b)(6). Morrison argues that Plaintiff has failed to state a claim against her because: (1) the attorney immunity doctrine is a complete bar to suit; (2) Morrison, as an attorney, is excluded from the statutory definition of a debt collector; and (3) the at-issue liens were not fraudulent. Doc. No. 31 at 4. The Court addresses each contention in turn.

### *Attorney Immunity*

Morrison argues that the attorney-immunity doctrine is a complete bar to this suit. Morrison contends that dismissal is proper "[b]ecause attorneys are immune from suit by non-clients for any alleged acts and/or omissions undertaken while providing legal services to their clients." *Id.* at 7. Morrison states that her actions or inactions were in her capacity "as an attorney representing each co-defendant in this action during the relevant time period. Indeed, any hospital lien allegedly filed, and any communication Morrison allegedly made to any patient was done in connection with her representation." *Id.* at 13.

Plaintiff Balderas' Complaint supports Morrison's contention that she was acting in her representative capacity. For example, Balderas' Complaint states that "Morrison, on behalf of ETX, filed a hospital lien" and that "Morrison, at the direction of ETX, filed and recorded said liens . . . ." Doc. No. 57-1 at ¶ 3. Thus, Morrison concludes, taking "Plaintiff's own allegations that Morrison's actions were taken in a representative capacity as the lawyer for the co-defendants as true, the attorney-immunity doctrine applies and completely bars Plaintiff's Complaint." Doc. No. 31 at 14.

Balderas responds that "attorneys are not protected from liability to non-clients for their actions when they do not qualify as the kind of conduct in which an attorney engages when discharging his duties to his client." Doc. No. 34 at 2-3. Balderas notes that "[t]he Texas Supreme Court has held that fraudulent business schemes are exactly the kind of conduct not covered under the Attorney-Immunity Doctrine." *Id.* at 3.

Balderas contends that the "claims against Morrison are the exact type of claims that courts have held not covered under the Attorney-Immunity Doctrine." *Id*. Specifically, the "crux" of her claims is based on the fraudulent lien statute. *Id.* She asserts "throughout [the] complaint that

Morrison was engaged in a fraudulent scheme with the other named Defendants." *Id.* Balderas concludes that the "claims related to the fraudulent schemes referred to above are not barred by the Attorney-Immunity Doctrine." *Id.*

The Texas attorney immunity doctrine is "intended to ensure loyal, faithful, and aggressive representation by attorneys employed as advocates by avoiding the inevitable conflict that would arise if they were forced constantly to balance their own potential exposure against their client's best interest." *Ironshore Europe DAC v. Schiff Hardin, LLP*, 912 F.3d 759, 765 (5th Cir. 2019) (quoting *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481, 483 (Tex. 2015)). "[A]ttorneys are generally 'immune from civil liability to non-clients for actions taken in connection with representing a client in litigation.'" *Id.* (quoting *Cantey Hanger, LLP*, 467 S.W.3d at 481). "'An attorney may be liable to nonclients only for conduct outside the scope of his representation of his client or for conduct foreign to the duties of a lawyer,' which 'inquiry correctly focuses on the kind of conduct at issue rather than the alleged wrongfulness of said conduct.'" *Id.* at 766 (quoting *Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018)). In pleading attorney immunity, "the only facts required . . . are the type of conduct at issue and the existence of an attorney-client relationship at the time." *Id.* (citing *Youngkin*, 546 S.W.3d at 683).

"An attorney seeking dismissal based on immunity bears the burden of establishing entitlement to the defense." *Id.* at 763 (citing *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017)). "To meet this burden, the attorney must 'conclusively establish that the alleged conduct was within the scope of the attorney's legal representation of the client." *Id.* (citing *Santiago v. Mackie Wolf Zientz & Mann, P.C.,* No. 05-16-00394-CV, 2017 WL 944027, at * 3 (Tex. App.—Dallas Mar. 10, 2017, no pet.) (mem. op.)). "Texas courts occasionally grant attorney immunity at the motion to dismiss stage where the scope of the attorney's representation—and thus entitlement to the

immunity—is apparent on the face of the complaint." *Id.* at 763-64 (citing *Santiago*, 2017 WL 944027 at * 3).

The threshold attorney-immunity issue is whether Morrison's conduct, wrongful or not, was "foreign to the duties of an attorney." *Cantey Hanger, LLP*, 467 S.W.3d at 482. If so, the attorney may be amenable to suit. *Id.* Courts look to the "kind of conduct" underlying the allegations to determine if attorney immunity is appropriate. *Id.* Courts do not consider "whether that conduct is meritorious or sanctionable." *Id.* (citations omitted). Balderas contends that there is a general fraud exception to attorney immunity. Doc. No. 32 at 2. Contrary to Balderas' contentions, however, fraudulent conduct does not itself extinguish attorney immunity. *Cantey Hanger, LLP*, 467 S.W.3d at 483 ("Merely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney.'"). Balderas' contention that the fraudulent "crux" of her Complaint conquers Morrison's immunity defense thus fails.

The Court then reviews the allegations to determine the "kind of conduct" Morrison committed as alleged in this case. To do so, the Court looks to Balderas' Complaint, which alleges:

> Defendant ETX entered into an agreement with Morrison in which Morrison would file liens on behalf [of] ETX and head up collection efforts for the underlying charges of the liens against accident victims who were treated at its hospitals. At the direction of ETX, Morrison filed liens without regard to whether or not the accident victims had available valid commercial health coverage. Morrison, at the direction of ETX[,] filed and recorded said liens with the absolute knowledge that the liens were fraudulent and unlawful.

Doc. No. 57-1 at 2.

According to Balderas' Complaint, Morrison filed and recorded liens on ETX's behalf and "head[ed] up collection efforts" for the other named defendants. Doc. No. 57-1 at 2. Morrison states that any action at issue in this case was done on behalf of her clients. Doc. No. 31 at 13. In

her response, Balderas does not respond to that contention or argue that Morrison was acting outside of her scope as an attorney. Rather, she merely argues that Morrison engaged in a fraudulent scheme with other defendants. *See* Doc. No. 34 at 3.

Removing fraud from the allegations, Balderas complains of two of Morrison's actions: filing liens on behalf of a client and communicating with those against whom liens were filed. These actions, taken on a client's behalf are the "kind of conduct" that falls within the scope of an attorney's representation of her client. *See e.g., Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 287-88 (Tex. App.—Fort Worth 1997, pet. denied) (holding that attorneys were not liable to opposing parties for filing a wrongful garnishment action); *Cantey Hanger*, 467 S.W.3d at 484 (citing *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. Denied) (holding that a claim against an attorney for conspiracy to defraud was not actionable where the complained-of actions involve "acts taken and communications made to facilitate the rendition of legal services to the client")). Balderas does not contest that the conduct at issue is within the scope of an attorney's practice, but merely relies on a non-existent fraud exception to attorney immunity. Morrison has shouldered her burden to show that her conduct was within the scope of her representation. *Ironshore,* 912 F.3d at 763.

But attorney immunity is not absolute. Thus, even if Morrison's conduct was the kind engaged in by attorneys in representing their clients, the inquiry is not over. *Youngkin*, 546 S.W.3d at 682 ("This is also not to say that attorneys are insulated from all liability to nonclients for all wrongdoing in the name of a client."). Nonetheless, Morrison cites four cases to support her contention that attorney immunity is an absolute bar. The Court addresses each.

First, Morrison cites *Ironshore*, in which the Fifth Circuit held that "the district court erred in rejecting [defendant law firm's] attorney immunity defense because the conduct sued on

occurred during the representation of the firm's client." 912 F.3d at 761. In *Ironshore*, the Circuit Court made an *Erie* guess as to whether the Texas attorney immunity doctrine applied to cases of attorney negligent misrepresentation. *Id.* at 764. After reviewing the Texas Supreme Court's decision in *Cantey Hanger*, the Court held that attorney immunity does apply in such cases. *Id.* at 768.

Second, Morrison cites *Cantey Hanger*, the Texas Supreme Court case extensively analyzed in *Ironshore*. *Cantey Hanger* discussed whether fraud allegations defeated attorney immunity if the conduct complained of was committed by an attorney in the course of the attorney's representation of his client. 467 S.W.3d at 479. The Texas Supreme Court explains that Texas common law has "developed a more comprehensive affirmative defense protecting attorneys from liability to non-clients, stemming from the broad declaration over a century ago that 'attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages.'" *Id.* at 481 (quoting *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. Civ. App. 1910, writ ref'd)). The Court goes on to reject a general fraud exception to attorney immunity, stating that such an exception would "significantly undercut the defense." *Id.* at 483.

Next, Morrison cites *Youngkin*, a more recent Texas Supreme Court case wherein the Court reaffirms the standard set out in *Cantey Hanger*. 546 S.W.3d at 681-82. In *Youngkin*, Plaintiff sued attorney defendant for allegedly knowingly engaging in a fraudulent scheme aimed at divesting plaintiffs of their interest in real property. *Id.* at 678. The Court, noting the absence of a general fraud exception, held that attorney immunity protected defendant from suit as he was acting in his capacity as attorney for his clients. *Id.* at 684.

Finally, Morrison cites to *U.S. Bank National Association v. Sheena*, 479 S.W.3d 475 (Tex. App.—Houston [14th Dist.] 2015, no pet.). In that case, the Houston Court of Appeals rejected plaintiff's fraud claim against attorney defendant, noting that fraudulent misrepresentation and fraudulent transfers in the litigation context were not "foreign to the duties of an attorney" and thus were not actionable conduct. *Id.* at 480.

Each of the cases Morrison cites—as with the case at bar—involve allegations of some type of fraud. However, none of the cited cases address the issue of attorney liability under the Texas or Federal debt collection statutes. Case law addressing such statutes, discussed below, indicates that certain allegations pierce attorney immunity protection. Accordingly, the Court next determines whether the Complaint alleges any conduct that pierces Morrison's attorney immunity.

### Morrison's Debt Collector Status

Morrison states that this entire suit is barred because of attorney immunity. However, while attorneys are immune from liability for conduct arising in the course of client representation, that immunity does not apply when an attorney's conduct is outside the scope of client representation. Once such way that an attorney can act outside of that scope is to meet the definition of a statutory debt collector. "Attorneys may be liable (and therefore not entitled to qualified immunity) under the [Federal Fair Debt Collection Practices Act] where their actions qualify them as 'debt collectors' under 15 U.S.C. § 1692a." *Parker v. Buckley Madole, P.C.*, No. 4:17-CV-307-ALM-CAN, 2018 WL 1704084, at * 6 (E.D. Tex. Jan. 8, 2018), *report and recommendation adopted*, No. 4:17-CV-307-ALM, 2018 WL 1625607 (E.D. Tex. April 4, 2018) (citing *Clark v. Bank of Am., N.A.*, No. SA-13-CA-281-FB-HJB, 2013 WL 12126785, at * 2 (W.D. Tex. July 17, 2013), *report and recommendation adopted*, No. SA-13-CA-281-FB, 2013 WL 12126351 (W.D. Tex. Oct. 1, 2013)). "Attorneys qualify as debt collectors for purposes of the FDCPA when they

9

regularly engage in consumer debt collection, including but not limited to litigation on behalf of a creditor client." *Reyes v. Steeg Law, L.L.C.*, 760 Fed.App. 285, 287 (5th Cir. 2019) (quoting *Mahmoud v. De Moss Owners Ass'n, Inc.*, 865 F.3d 322, 330 (5th Cir. 2017)). Similarly, the Texas Fair Debt Collection Practices Act (TDCPA) provides for attorney liability if certain standards are met. Tex. Fin. Code § 392.001 et seq.

        i.        *Federal "Debt Collector"*

Under the Federal Fair Debt Collection Practices Act (FDCPA), a "debt collector means any person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Parker*, 2018 WL 1704084, at * 6; 15 U.S.C.A. § 1692a(6).

Morrison contends that she does not meet the statutory definition of a debt collector under the FDCPA. Doc. No. 31 at 14. Morrison argues that Balderas has "failed to allege any factual support raising a reasonable inference that Morrison collects debts as the principal purpose of her business or that she regularly collects debts for others." *Id.* (quoting *Parker*, 2018 WL 1704084, at * 6).

In response, Balderas highlights allegations from her Complaint. Doc. No. 34 at 3. The Complaint alleges: (1) that Morrison "headed up collection efforts for the other named Defendants"; (2) specific instances of Morrison's collection efforts; and (3) that the "aforementioned collections efforts have occurred thousands [of] times and continue to occur." *Id.* Balderas then argues that the Complaint "clearly set out facts to support [the] allegation that Morrison is a 'debt collector.'" *Id.* at 4. Balderas does not contend that Morrison's primary business is debt collection. The Court therefore determines whether Balderas has sufficiently

alleged that Morrison "regularly collects . . . debts owed or due or asserted to be owed or due another." *Parker*, 2018 WL 1704084, at * 6.

The Fifth Circuit has explained that "no bright-line rule identifies when an attorney or law firm 'regularly' collects or attempts to collect debts, so courts must make this determination on a case-by-case basis." *Hester v. Graham, Bright & Smith, P.C.*, 289 Fed.Appx. 35, 41 (5th Cir. 2008). Courts look to the volume of a person's debt collection services, which can be "regular" even if it makes up a small fraction of the person's business. *Id.* "Whether a party 'regularly' attempts to collect debts is determined, of course, by the volume or frequency of its debt-collection activities." *Id.* In determining whether collection is "regular," Courts consider a variety of factors, including:

> [T]he number of lawsuits filed and collection letters mailed, the percentage of time debt collection activities consume, the share of total lawsuits filed that were dedicated to debt collection, the number of creditor clients and the length of the firm's relationship with them, the frequency and nature of the non-collection work in which the firm engages, and the number of firm attorneys and other employees dedicated to debt collection activities.

*Reyes*, 760 Fed.Appx. at 287 (quoting *Kirkpatrick v. Dover & Fox, P.C.,* No. 4:13-cv-00123, 2013 WL 5723077, at * 5 (S.D. Tex. Oct. 21, 2013)).

However, even if one regularly collects debts, the FDCPA excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C.A. § 1692a(6)(F)(iii). Though the statute does not define "obtained," the Fifth Circuit has equated the term with "assigned." *Perry*, 756 F.2d at 1208. The Fifth Circuit further explained that "[t]he legislative history of section 1692a(6) indicates conclusively that a debt collector does not include . . . an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Id.*

11

At this stage in the litigation, the Court looks to the Complaint to determine whether Balderas has alleged conduct showing that Morrison "regularly" engaged in debt collection activities. Balderas states that Morrison filed over 900 liens on behalf of ETX. Doc. No. 57-1 at ¶ 7. Balderas also states that "Morrison sent a letter to Plaintiff notifying her that it was placing a lien . . ." and then sent debt collection communications to her. *Id.* at ¶ 20, 22. Assuming that filing liens, sending notices thereof, and corresponding "thousands [of] times" with debtors regarding collection are debt collection activities, Balderas has sufficiently pled that Morrison "regularly" performed enough debt collection activities to be a debt collector under the FDCPA. *Hester*, 289 Fed.Appx. at 41. (citing *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 63 (2nd Cir. 2004) (holding that a volume of 145 collection letters within a year combined with the regular dispersal of the letters over the course of the year was enough to establish that a law firm was a debt collector); *Garrett v. Derbes*, 110 F.3d 317, 318 (5th Cir. 1997) (holding that an attorney who in a nine month period attempted to collect debts owed to a client from 639 individuals "regularly" collected debts for FDCPA purposes); *Crossley v. Lieberman*, 868 F.2d 566, 570 (3rd Cir. 1989) (holding that an attorney who principally worked on debt collection matters in the pertinent time period and filed 175 foreclosures and other actions for four clients over eighteen months was a debt collector under the "regularly collecting" prong)).

Yet, even if Morrison regularly performed debt collection activities, she falls within the "in-default" exclusion to the debt collector definition. 15 U.S.C.A. § 1692a(6)(F)(iii); *see Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (affirming directed verdict was proper because defendants were not debt collectors and the FDCPA was inapplicable when the at-issue debt was not in default when assigned). Balderas' Complaint states that "ETX and Morrison filed hospital liens against every accident victim treated at the hospitals as a matter of course . . . ." Doc.

No. 57-1 at ¶ 3. Balderas does not allege that any patient was in default when liens were filed. ETX, the original creditor, therefore "obtained" any debt before a patient defaulted. Balderas also fails to allege that Morrison "obtained" any debts or that she did so separately from ETX.

It is implausible that Morrison "obtained" the debts after they went into default. Rather, Balderas repeatedly states that Morrison acted in concert with ETX, who obtained debts through performance of services, rather than through assuming another's debt. Doc. No. 57-1 ¶¶ 19, 22. This outstanding—but not in default—debt fits squarely in the statutory exclusion. 15 U.S.C.A. § 1692a(6)(F)(iii) (excluding "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated by such person [or] (iii) concerns a debt which was not in default at the time it was obtained by such person.").

Thus, even though Balderas has plausibly alleged that Morrison "regularly" engaged in debt collection activities, Morrison is not a debt collector because none of those debts, when "obtained," were in default. *See Perry*, 756 F.2d at 1208 (holding that defendants were not debt collectors and the FDCPA was inapplicable when the at-issue debt was not in default when assigned).

ii.     Texas "Debt Collector"

The TDCPA regulates debt collection practices in Texas. It applies to statutory debt collectors and "has a two-tiered structure that includes both 'third-party debt collectors' . . . and 'debt collectors.'" *Genender v. Kirkwood*, 506 S.W.3d 508, 514 (Tex. App.—Houston [1st Div.], 2016). A "debt collector" is defined as "a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts." Tex. Fin. Code §

392.001(6). A "third-party debt collector" is "a debt collector, as defined by 15 U.S.C. Section 1692a(6), but does not include an attorney collecting debt as an attorney on behalf of and in the name of a client unless the attorney has non-attorney employees who: (A) are regularly engaged to solicit debts for collection; or (B) regularly make contact with debtors for the purpose of collection or adjustment of debts." *Id.* § 392.001(7).

Morrison argues that she is not a debt collector under the TDCPA. Doc. No. 31 at 16. Morrison contends that she, as an attorney, is expressly excluded from the "third-party debt collector" definition. Doc. No. 31 at 16. Morrison states that Balderas has not alleged that she employs non-attorneys who engage in debt collection activities and has failed to allege any fact supporting her contention that Morrison is a "third-party debt collector" under the TDCPA. *Id.*

Balderas agrees with Morrison's statement of the law, namely that an attorney is considered a debt collector "if they have non-attorney employees who regularly make contact with debtors for the purposes of collection or adjustment of debt." Doc. No. 34 at 4 (citing Doc. No. 31 at 14). To satisfy that definition, Balderas states that "Plaintiffs have alleged that the class they represent is estimated to be 6,000 in number. Given this number of alleged class members, the reasonable inference is that Morrison did employ non-attorney employees to conduct activities as described above." *Id.* Balderas then concludes that "[t]he mere volume would make it impossible for a single attorney to take on alone." *Id.*

Balderas' Complaint alleges that Morrison is a debt collector. Doc. No. 57-1 at ¶ 72. More specifically, Balderas' response to Morrison's motion to dismiss focuses on the requirements outlined in the "third-party debt collector" definition. Doc. No. 34 at 4 (agreeing that "part of the definition that qualifies an attorney to be considered a debt collector is if they have non-attorney employees who regularly make contact with debtors for the purpose of collection or adjustment of

debts"). Although the terminology is somewhat circular, the TDCPA provides liability as a debt

collector against both a "third-party debt collector" and a "debt collector" as the statute defines

those terms. As Balderas has not alleged that Morrison attempted to collect her own debt, the Court

understands her claim to allege Morrison is liable as third-party debt collector. The Court thus only

addresses whether Balderas has pleaded facts sufficient to allege third-party debt collector status

under the TDCPA.

A third-party debt collector under the TDCPA is a debt collector as defined under the

FDCPA, but excludes attorneys who meet certain criteria. Tex. Fin. Code § 392.001(7). As

explained above, Morrison does not meet the definition of a debt collector under the FDCPA.

However, the Court addresses the second element of third-party debt collector status. For an

attorney to be a third-party debt collector, the TDCPA requires that the attorney debt collector

"regularly engage" employees who perform various debt collection functions. *Id.* Balderas asks

the Court to infer that because the proposed class includes 6,000 members, Morrison must have

employed non-attorney staff. Doc. No. 34 at 4. The Complaint states further factual contentions

which could lead to an inference of Morrison's retention of non-attorney employees. For example,

Balderas states that "Morrison filed in excess of 900 liens in Henderson County, Texas at the

direction of ETX." Doc. No. 57-1 ¶ 7.

However, the Complaint does not clearly allege that Morrison had employees, or that

anyone other than Morrison interacted with Balderas or other potential plaintiffs. To the contrary,

the Complaint states: ". . . *Morrison* sent a letter to Plaintiff . . . ." and references "[e]ach and every

communication *by Morrison* to Plaintiff . . . ." *Id.* at ¶ 19, 22 (emphasis added). Further, Balderas

does not provide any insight as to the feasibility of a single attorney filing hundreds of liens. Nor

does she explain why Morrison would have non-attorneys, rather than other attorneys, assisting her in filing liens and communicating with clients.

The facts in the Complaint do not permit the Court to infer more than a mere possibility of misconduct. Balderas' Complaint and response to Morrison's motion to dismiss thus fall short of "show[ing] that the pleader is entitled to relief" under the TDCPA. *Iqbal*, 556 U.S. at 679 ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the Complaint has alleged—but it has not shown—that the pleader is entitled to relief.").

### iii.     *Leave to Amend*

Morrison asks the Court to dismiss Balderas' claims against her with prejudice. Doc. No. 31 at 20. In her response to Morrison's motion to dismiss, Balderas does not request leave to amend, but simply asks the Court to deny Morrison's motion. Doc. No. 34 at 5.

Rule 15 of the Federal Rules of Civil Procedure governs amendments and "declares that leave to amend 'shall be freely given when justice so requires.'" *Foman v. Davis*, 371 U.S. 178, 182 (quoting Fed. R. Civ. P. 15(a)). "If the underlying facts or circumstances relied upon by plaintiff may be a proper subject or relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.* Thus, "[i]n the absence of any apparent or declared reason" for denying leave to amend, "leave should, as the rules require, be 'freely given.'" *Id.* (quoting Fed. R. Civ. P. 15(a)). Reasons supporting denial of leave to amend include undue delay, bad faith, undue prejudice, or futility of amendment. *Id.*

After numerous amendments, Balderas' Fourth Amended Complaint is the live complaint. *See* Doc. No. 61 at 2. The complaint was filed after Morrison's present motion to dismiss. Balderas was thus aware of the issues Morrison raised regarding the Complaint's viability and had an

opportunity to incorporate any changes into her Fourth Amended Complaint. Further, after the

Court granted Balderas leave to file her Fourth Amended Complaint, the Court provided an

opportunity to submit a new response to Morrison's motion to dismiss, which Balderas declined.

Doc. No. 34. Balderas has had many opportunities to remedy the defects in her Complaint to state

a viable claim against Morrison (to the extent a viable claim is possible). The Court would

therefore be within its discretion to grant Morrison's motion to dismiss with prejudice. *Goldstein*

*v. MCI WorldCom*, 340 F.3d 238, 255 (5th Cir. 2003) (holding that the district court did not abuse

its discretion when it denied leave to amend where plaintiff was aware of pleading deficiencies

and failed to demonstrate to the court how those deficiencies could be cured). However, given the

procedural history of this case, leave to replead as to the specific issues discussed herein is proper.

## CONCLUSION

Texas law provides attorney immunity for conduct within the scope of an attorney

representing her client. Morrison's alleged conduct is not "foreign to the duties of a lawyer."

Morrison is thus protected through attorney immunity from Balderas' claims unless a cause of

action pierces attorney immunity. Two allegations in the Complaint do so: alleged violations of

the TDCPA and the FDCPA. As to Balderas' debt collection allegations, she has alleged facts

showing that Morrison "regularly" attempted to collect debts. However, she fails to allege that

those debts were in default when obtained, as is required by the FDCPA. Balderas has further not

alleged that Morrison had non-attorney employees engaged in debt collection, as is required for a

third-party attorney debt collector under the TDCPA. Morrison is thus not a debt collector under

the FDCPA or the TDCPA.

Having determined that Morrison is not a statutory debt collector and is protected by

attorney immunity, the court **RECOMMENDS GRANTING** Defendant Morrison's motion to

dismiss Plaintiff's claims against her without prejudice to repleading as to the specific issues addressed herein.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b). A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto Assn*, 79 F.3d 1415, 1430 (5th Cir 1996) (en banc), *superseded on other grounds by statute*, 29 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 4th day of March, 2020.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE