# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| MARIA V. RUIZ DE BALDERAS, Individually and on Behalf of All Others Similarly Situated, | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | No. 6:19-CV-58-JDK-KNM |
| ETX SUCCESSOR ATHENS, *et al.*, | § § § | |
| *Defendants*. | § § | |

## ETX'S MOTION FOR SUMMARY JUDGMENT

## I.   STATEMENT OF THE ISSUES

Plaintiff's Fourth Amended Complaint [DE 57-1] ("**FAC**") asserted five claims against Defendants ETX Successor System and ETX Successor Athens (together, "**ETX**"), for allegedly: (1) making, presenting, and using a fraudulent lien under Texas Civil Practice and Remedies Code § 12.002, FAC ¶¶ 66–70; (2) violating the Texas Fair Debt Collection Practices Act ("**TDCPA**"), *id.* ¶¶ 71–76; (3) violating the Federal Fair Debt Collection Practices Act ("**FDCPA**"), *id.* ¶¶ 78–80; (4) tortiously interfering with Plaintiff's contractual and expected business relationships, *id.* ¶¶ 81–86; and (5) unjustly enriching itself at Plaintiff's expense, *id.* ¶¶ 87–92.

Plaintiff abandoned her tortious-interference and unjust-enrichment claims in responding to ETX's Motion to Dismiss [DE 64]. *See* Pl.'s Resp. to ETX's Mot. to Dismiss at 6 [DE 74] ("Plaintiff no longer desires to pursue Counts Four and Five of her [FAC] and hereby gives notice that she abandons her claims for Tortious Interference with Contractual Relationship/Business Expectancy and Unjust Enrichment (FAC ¶¶ 81–92).").

This Motion for Summary Judgment presents the issue of whether Plaintiff's remaining claims against ETX in Counts One, Two, and Three of the FAC should be dismissed as legally and factually insupportable.

## II.   PRELIMINARY STATEMENT

Plaintiff filed this lawsuit over sixteen months ago. Since then, Plaintiff has filed five different complaints, each variously adding, modifying, or omitting defendants, claims, and theories of liability. At this juncture, all that remains are Plaintiff's allegations (1) that ETX, through its attorney, filed a fraudulent hospital lien for the amount of medical services that Plaintiff received at an East Texas Medical Center ("**ETMC**") facility on May 22, 2016 in connection with a car wreck in which Plaintiff was the victim, and (2) that ETX, again through its attorney, thereafter violated federal and Texas debt-collections laws.

1

Plaintiff's claims fail as a matter of law for the reasons further discussed below and in ETX's pending Motion to Dismiss. Among other things, Plaintiff's fraudulent-lien theory depends on a 2019 amendment to the Texas Property Code that cannot retroactively apply to a lien filed in 2016. Plaintiff has yet to identify any law that contemporaneously required the hospital lien filed against her to be limited only to the amount she ultimately would have been obligated to pay under her health insurance contract. As to Plaintiff's debt-collection claims, it is beyond dispute that ETX—formerly ETMC entities—is not primarily engaged in debt collection and that ETX is the original creditor of the hospital lien, excluding it here from the federal and Texas debt-collection acts. Notably, the Court already has held that the person Plaintiff alleges was working as a debt collector on ETX's behalf, dismissed co-defendant and attorney Shelli Morrison ("**Morrison**"), does not qualify as a "debt collector" under the FDCPA and TDCPA.

Plaintiff's claims also fail as a matter of fact, as discovery has revealed that Plaintiff lacks any evidence upon which to create a genuine dispute of material fact on essential elements of her claims. No evidence suggests—and Plaintiff cannot show—that the document evidencing the hospital lien is inauthentic (let alone that ETX knew as much); that ETX intended to physically, financially, or emotionally injure Plaintiff by having its attorney file the lien; or that Plaintiff suffered any such injury as a result of the lien. Indeed, Plaintiff's documents show that she settled her personal-injury claim for policy limits, receiving a check in August 2019, but nonetheless has never paid anything for the medical treatment reflected in the lien. Plaintiff also cannot show that she suffered actual damages from any allegedly improper debt-collection activity attributable to a communication by Morrison.

For these and the reasons discussed below, ETX respectfully asks the Court to grant summary judgment for ETX.

### III. STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule CV-56, and solely for the purposes of this Motion, ETX sets forth the following undisputed material facts.

1. On May 22, 2016, Plaintiff was involved in a motor vehicle accident. FAC ¶ 15.

2. The same day, Plaintiff was treated at ETMC Athens by Dr. Carl Caroe, among other treatment providers. App. 2–3; FAC ¶¶ 15–16.

3. A health insurance card in Plaintiff's name was submitted to ETMC Athens at intake. FAC ¶ 17.

4. ETMC received assignment of Plaintiff's first- and third-party claims. App. 1; FAC ¶¶ 5–6.

5. Plaintiff was charged $29,406.75 for the treatment she received from ETMC Athens on May 22, 2016. App. 2–3; FAC ¶¶ 19–20.

6. After her accident, Ms. Balderas retained attorney Stephen Mitchell ("**Mitchell**") to pursue personal-injury claims against the person who caused her accident. App. 5–7; FAC ¶ 21.

7. On June 10 and 14, 2016, Mitchell sent State Farm a letter advising the insurer that Mitchell represented Plaintiff. App. 8–9.

8. The next day, June 15, 2016, attorney Shelli Morrison ("**Morrison**") filed a hospital lien in ETMC Athens's favor in the records of Henderson County, Texas. App. 10–11; FAC ¶ 19.

9. Morrison sent a statutorily required lien notice in June 2016 and on multiple occasions thereafter. App. 16–19; FAC ¶ 20.

10. In his correspondence with Morrison and State Farm, Mitchell represented the charges attributable to Plaintiff's treatment at ETMC Athens on May 22, 2016 to be $29,406.75. App. 12–13.

11. That correspondence also reflects that, although he requested that the amount Plaintiff owed be discounted to permit her a greater recovery from her settlement with State Farm, Mitchell did not dispute the amount or reasonableness of the medical services provided to Plaintiff. *See, e.g.*, App. 20–26.

12. In 2017, Plaintiff released her claims against State Farm's insured. App. 14–15.

13. In exchange, State Farm sent Mitchell a check for $30,000. App. 4.

14. Throughout Mitchell's representation of Plaintiff, he attempted to negotiate a discount to the amount that Plaintiff owed for the medical treatment she received on May 22, 2016. App. 20–29, 34–38, 41–44.

15. Plaintiff disengaged Mitchell as her attorney in October 2018. App. 31.

16. Plaintiff instead retained Charles Nichols ("**Nichols**") and his law firm. App. 30.

17. Mitchell paid Plaintiff $16,463.32 in August 2019 as her share of the settlement payment from State Farm. App. 32–33.

18. Plaintiff has not paid any part of the amount owed for her treatment at ETMC Athens on May 22, 2016 and reflected in the hospital lien.

### IV. RELEVANT PROCEDURAL HISTORY

Plaintiff filed her Original Complaint on February 19, 2019. After three more attempts at pleading her claims, Plaintiff sought leave to file the FAC on October 2, 2019. *See* Mot. for Leave [DE 57]. The Court granted leave on October 8, 2019, *see* Order [DE 61], following a status conference at which Plaintiff agreed that the FAC encapsulated the allegations and claims on which she intended to litigate the case.

Plaintiff's central allegation appears in paragraph 2 of the FAC, which alleges that "Defendants place[] and fil[e] . . . unlawful and fraudulent liens against emergency room ("ER") patients who have been accident victims who may have potential personal injury claims against

4

third parties, who also had valid coverage under a commercial health plan that the hospitals refuse to accept." Plaintiff alleges that "Defendants unlawfully encumber[] the patients' personal injury claims through the use of the liens in order to recover more than the negotiated rate of its services" under the patients' health insurance plans. FAC ¶ 2. Plaintiff alleges that Morrison "file[d] liens on behalf ETX and head[ed] up collection efforts for the underlying charges of the liens against accident victims who were treated at its hospitals[,] . . . without regard to whether or not the accident victims had available valid commercial health coverage." FAC ¶ 3.

The FAC asserts claims against ETX and Morrison. Morrison moved to dismiss the claims asserted against her in Plaintiff's Third Amended Complaint in August 2019 [DE 31]. Although Morrison filed her motion before Plaintiff filed the FAC, Morrison "informed the Court that [her] motion should be considered as if directed toward the [FAC]." Rpt. & Rec. ("**R&R**") [DE 84] at 1 n.1. ETX moved dismiss the FAC in October 2019.

On March 4, 2020, Magistrate Judge Mitchell issued the R&R, which addressed only Plaintiff's claims against Morrison and recommended that they be dismissed. The R&R held that attorney immunity barred Plaintiff's fraudulent-lien claim against Morrison, R&R at 4–9, and that the FAC's allegations demonstrated as a matter of law that Morrison did not meet the definition of a "debt collector" for the purposes of the federal and Texas debt-collection acts, *id.* at 9–16. Importantly here, the R&R concluded in its analysis that Morrison could not have acted a "debt collector" because the alleged "debt" owed by Plaintiff could not have been in default at the time ETX or Morrison "obtained" the debt. *Id.* at 13. Rather, the R&R held that ETX was the "creditor" of the "debt" reflected in the lien by virtue of the "performance of [medical] services," and that therefore Plaintiff's "debt fits squarely in [a] statutory exclusion." *Id.* The R&R recommended

5

dismissal without prejudice, but acknowledged that dismissal with prejudice was appropriate given the "many [prior] opportunities to remedy the defects in" the pleadings. *Id.* at 17.

Plaintiff did not object to the R&R. The Court adopted the R&R and dismissed Plaintiff's claims against Morrison without prejudice. Order of Mar. 26, 2020 [DE 88]. Plaintiff opted against filing a further amended complaint, leaving only her three claims against ETX.

## V.     SUMMARY JUDGMENT STANDARD

For her claims to survive summary judgment, Plaintiff must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted), not just suggest "that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Plaintiff also cannot carry her summary-judgment burden through "'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 433 (5th Cir. 2005).

Relevant here, ETX can discharge its burden as summary-judgment movant without disproving Plaintiff's case. ETX need only identify the ways in which Plaintiff has failed to support one or more essential elements of her claims with evidence sufficient to allow a reasonable jury to find in her favor on those elements. *Grimes v. D.C.*, 794 F.3d 83, 93 (D.C. Cir. 2015); *see also* FED. R. CIV. P. 56(c)(1)(B) (Summary judgment is proper if the evidence "does not establish the . . . presence of a genuine dispute, or [if] an adverse party cannot produce admissible evidence to support [a material] fact"); 2010 Advisory Committee Note to Rule 56(c)(1)(B) ("[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

6

## VI. ARGUMENT

Plaintiff has no evidence of at least one essential element of each of her three remaining claims, and each of those claims also suffers from dispositive legal defects. Accordingly, no genuine issue of material fact exists as to any claim left in this case, and ETX is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a), (c)(1)(B).

### A. Plaintiff Has No Evidence For Any Elements of Her Fraudulent Lien Claim

Plaintiff alleges that ETX filed a fraudulent lien in violation of Section 12.002(a) of the Texas Civil Practice and Remedies Code. That provision creates a cause of action against "a person" who "make[s], present[s], or use[s] a document or other record with: (1) knowledge that the document or other record is a . . . fraudulent lien . . . ; (2) intent that the document or other record be given the same legal effect" as certain categories of documents "evidencing a valid lien. . . ; and (3) intent to cause another person to suffer: (A) physical injury; (B) financial injury; or (C) mental anguish or emotional distress." TEX. CIV. PRAC. & REM. CODE § 12.002(a). Plaintiff cannot support any of these elements.

As an initial matter, no evidence remotely suggests that the document evidencing ETX's lien is fraudulent. The Texas Civil Practice and Remedies Code does not define "fraudulent lien" as used in § 12.002(a)(1), but § 12.002(a)(2) makes clear that a "fraudulent lien" as used in the statute is a "document or other record" that the user desires to "be given the same legal effect" as a document "evidencing a valid lien." Thus, a "fraudulent lien" is, at minimum, a document that a user purports to be a lien, but that is not.

The document evidencing the hospital lien is authentic and has been relied upon by Plaintiff herself. Morrison filed the hospital lien a little over three weeks after Plaintiff's auto accident, long before any potentially applicable deadline to submit a claim to her health insurer. Hospitals routinely file liens soon after they treat victims in auto accidents—and for the full amount of care—

7

precisely because personal-injury claims like Plaintiff's often settle within weeks of treatment, before health-insurance claims can be finalized. *See, e.g.*, *Mem. Hermann Hosp. Sys. v. Progressive Cnty. Mut. Ins. Co.*, 355 S.W.3d 123, 124–25 (Tex. App.—Hous. [1st Dist] 2011, pet. denied) (upholding hospital lien filed thirty minutes before insurer cut over $100,000 check to personal-injury plaintiff, for claims that were settled within 24 days of plaintiff's accident). The undisputed evidence also shows that the amount reflected in the hospital lien is the same that Plaintiff was asked to pay for her treatment on May 22, 2016, and that Plaintiff, represented by Mitchell, later used to settle her personal-injury claim and to negotiate a fee-reduction.

Plaintiff has no evidence to the contrary, no evidence that ETX knows that the document evidencing the lien is anything other than an authentic lien document, and no evidence that ETX knowingly used a fraudulent document to cause her physical, financial, or emotional injury. Tellingly, in her initial disclosures, Plaintiff answered "N/A" to both parts concerning "suit[s] alleging physical or mental injury and damages." Ex. A. Even if Plaintiff now believes that she should have been charged a different amount, the perceived correctness of ETX's billing says nothing about whether the document evidencing ETX's hospital lien is **fraudulent**.

Plaintiff lacks evidence even of nonmaterial facts. Although not technically an element of Plaintiff's fraudulent-lien claim, no evidence shows that ETX improperly "refused" to bill her insurance or failed to "honor the agreed to contractual discount" allegedly required by her health insurance. FAC ¶ 18. Plaintiff, in fact, has been unable to identify both the amount she believes she should have paid for the medical treatment reflected in the lien and what amount of that treatment she believes would have been covered by her insurance. *See, e.g.*, Pl.'s Resp. to Mot. to Dismiss at 2 [DE 74] ("To make it clear, Plaintiff contends that a hospital lien for any amount over and above her co-pay **or** deductible is prohibited . . . ." (emphasis added)); Pl.'s Additional

Disclosures of Jan. 2, 2020 at 2 (Ex. B) ("Plaintiff is unable to accurately calculate damages for each of her causes of action at this point as they are dependent on contractual discount that should have been applied to her hospital bill.").

In any case, ETX's alleged failure to bill Plaintiff's health insurance—even if true—does not make its hospital lien fraudulent.  Plaintiff relies on the "timely billing" provisions of Texas Civil Practice and Remedies Code §§ 146.002 and 146.003 to suggest that the failure to bill a health insurer renders fraudulent any hospital lien filed for more than the amount a patient would have paid to the hospital after accounting for insurance payments.  *See, e.g.*, FAC ¶¶ 25–28.  But that statute does not mention hospital liens.

Plaintiff did argue in her Response to ETX's Motion to Dismiss that § 55.004(d)(5) of the Texas Property Code now prohibits hospitals from including in the amounts of hospital liens those charges affected by § 146.003 of the Civil Practice and Remedies Code.  *See* Pl.s Resp. to ETX's Mot. to Dismiss. at 3–4.  But § 55.004(d)(5) was not added to the Property Code until **June 2019**, over **three years after** Morrison filed the hospital lien.  Nothing indicates that the Legislature intended its 2019 amendment to apply retroactively; the Texas Constitution prohibits "retroactive law[s]."  *See* TEX. CONST. art. I, § 16.  And although the legislative history says that a different amendment to the Property Code was a clarification of existing law, no such explanation appears for the amendment that added §55.004(d)(5).  *See* H.B. 2929 Bill Analysis, Jud. & Civil Juris. Comm. Rpt.

But even if § 55.004(d)(5) could be applied retroactively or were a clarification of the law, Plaintiff still cannot prove the first and third elements of her fraudulent lien claim.  Even if § 55.004(d)(5) did clarify existing law, ETX still could not have "known" in 2016 that filing a hospital lien in the amount of Plaintiff's full medical bill constituted a "fraudulent lien."  At most,

9

ETX took one side in an dispute concerning an issue of statutory interpretation that required legislative action in 2019 to settle its meaning. Plaintiff can point to no authority in 2016 that should have definitively warned ETX away from filing its hospital lien. *See, e.g.*, *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 70 n.20 (2007); ("Where, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator.").

Likewise, ETX could not possibly have known that a subsequent legislative amendment would preclude it from including charges affected by § 146.003 of the Civil Practice and Remedies Code. By extension, then, Plaintiff cannot establish the third element of her claim. If ETX did not know that its lien was fraudulent (or that a legislative amendment would subsequently affect its rights to recover certain charges under the lien), ETX could not have intended to cause Plaintiff physical, mental, or financial injury by filing a hospital lien that ETX believed was permitted under the law in 2016. In sum, ETX's decision to file a hospital lien in the circumstances alleged by Plaintiff was permitted by Texas law in 2016, and thus did not make ETX's lien "fraudulent."

Accordingly, Plaintiff's fraudulent-lien claim is legally and factually deficient. It should be dismissed with prejudice.

### B. Summary Judgment Is Proper on Plaintiff's Debt-Collection Claims.

#### 1. Federal Fair Debt Collection Practices Act

Plaintiff also cannot proceed on her FDCPA claim. To prove a violation of the FDCPA, Plaintiff must establish: (1) she has been the object of collection activity arising from a consumer debt; (2) ETX is a debt collector as defined by the FDCPA; and (3) ETX engaged in an act or omission prohibited by the FDCPA. *Vick v. NCO Fin. Sys.*, No. 2:09-CV-114, 2011 WL 1193027, at *2 (E.D. Tex. Mar. 7, 2011). "Only parties who meet the statutory definition of debt collector

are subject to civil liability under the FDCPA." *Bacon v. Sw. Airlines Co.*, No. 3:97-CV-2211, 1999 WL 134569, at *2 (N.D. Tex. Mar. 5, 1999).

At minimum, Plaintiff's FDCPA claim falters on the second element.. The term "debt collector" refers to (1) any person engaged in "any business the principal purpose of which is the collection of any debts" or (2) any person who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Neither definition encompasses ETX. ETX's principal business purpose is to provide medical services, not to collect debts. Plaintiff thus also cannot establish that ETX regularly collects or attempts to collect debts on behalf of any third party, or that ETX did so during the time period at issue in the FAC. As observed in the R&R, moreover, ETX qualifies for the "'in-default' exclusion to the debt collector definition" contained in 15 U.S.C. § 1692a(6)(F)(iii) because ETX indisputably could not have acquired the "debt" reflected in the hospital lien when the debt was in default. *See* R&R at 12–13. Because ETX provided medical services to Plaintiff—the unpaid amount of which is reflected in the lien—ETX is "the **original creditor**" of Plaintiff's medical debt and thus could not have "'obtained' any debt before a patient [like Plaintiff] defaulted." *Id.* at 13 (emphasis added). For the same reason, ETX also would qualify for the exclusion in 15 U.S.C. § 1692a(6)(F)(ii), which excludes "a debt which was originated by such person."

And as a non-debt collector, moreover, ETX cannot be held vicariously liable for the conduct of a debt collector acting on its behalf, even if Morrison was a "debt collector"—which the Court already has held she was not. *See London v. Gums*, No. 12-CV-3011, 2014 WL 546914, at *5 (S.D. Tex. Feb. 10, 2014) (collecting cases); *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 190–91 (S.D. Tex. 2007) ("We do not think it would accord with the intent of Congress, as manifested in the terms of the Act, for a company that is not a debt collector to be

11

held vicariously liable for a collection suit filing that violates the Act only because the filing attorney is a 'debt collector.'" (citation omitted)).

Plaintiff also fails to support an act or omission prohibited by the FDCPA. The FAC challenges activity undertaken in connection with the enforcement of a security interest—*i.e.*, a hospital lien—which, as the Supreme Court held last year, is only subject to the restrictions found in 15 U.S.C. § 1692**f(6)**. *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1038 (2019). By asserting that "Defendants misrepresented the character, extent, and amount of the alleged debt owed," FAC ¶ 78, Plaintiff relies on 15 U.S.C. § 1692**e(2)**, which encompasses "[t]he false representation of—the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). But that provision does not apply to communications made by security-interest enforcers, such as the statutorily-required notice that Morrison sent Plaintiff notifying her of the hospital lien. FAC ¶¶ 20, 24. Only the "prohibitions contained in § 1692f(6) . . . cover security-interest enforcers, while the other 'debt collector' provisions of the Act [do] not." *Obduskey*, 139 S. Ct. at 1038. Plaintiff's FDCPA falsity theory nevertheless still would fail because it relies on the idea that the lien is for an improper amount by virtue of Texas Property Code § 55.004(d)(5), which was not law at the time Morrison filed the lien. Plaintiff cannot rely on a change in the law to retroactively create a fact issue on falsity and scienter. *See, e.g.*, *Van Hoven v. Buckles & Buckles PLC*, 947 F.3d 889, 895–97 (6th Cir. 2020) ("Legal contentions must be objectively baseless, not just later proved wrong, to be actionable under the Act." (collecting cases)).

Whether analyzed through a legal or factual lens, Plaintiff's FDCPA claim fails and should be dismissed with prejudice.

### 2. Texas Fair Debt Collection Practice Act

Plaintiff's TDCPA claim fails for essentially the same reasons. To prove a claim under the TDCPA, Plaintiff must establish that (1) ETX is a "debt collector"; (2) ETX committed a wrongful

act in violation of the TDCPA; (3) the wrongful act was committed against Plaintiff; and (4) Plaintiff was injured as a result of the ETX's wrongful act. *Birchler v. JPMorgan Chase Bank*, No. 4:14-CV-81, 2015 WL 1939438, at *5 (E.D. Tex. Apr. 29, 2015).

Plaintiff cannot support any of these elements. As the R&R explained (at 13–14), the FAC's TDCPA claim uses a theory of vicarious liability based on ETX's retention of Morrison to file and pursue payment on the hospital lien as a "third-party debt collector." FAC ¶¶ 3, 19–20. The TDCPA defines "third-party debt collector" coextensively with the FDCPA's definition of "debt collector." R&R at 14. The Court, in adopting the R&R, already has held that Morrison is neither a "debt collector" under the FDCPA nor a "third-party debt collector" under the TDCPA. *Id.* at 13–16. Because Morrison was not acting as any type of "debt collector," ETX could not have acted as a "debt collector" or, through Morrison, committed a wrongful act that injured Plaintiff. Plaintiff thus also cannot show that ETX caused her to suffer actual damages from any alleged TDCPA violation, even though she "must plead and prove actual damages to prevail on a TDCA claim." *Aguilar v. Ocwen Loan Servicing, LLC*, No. 3:17-CV-1165, 2018 WL 949225, at *8 (N.D. Tex. Feb. 20, 2018). Accordingly, Plaintiff cannot proceed on her theory of vicarious TDCPA liability against ETX, and the claim should be dismissed with prejudice.

## VII. CONCLUSION

ETX respectfully requests that the Court (1) grant this Motion, (2) dismiss Plaintiff's remaining claims in Counts One, Two, and Three of the FAC with prejudice, and (3) enter a take-nothing judgment in favor of ETX.

Dated: June 24, 2020

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Justin R. Chapa*
Justin Roel Chapa
   Texas Bar No. 24074019
   justin.chapa@morganlewis.com
Megan Renee Whisler
   Texas Bar No. 24079565
   megan.whisler@morganlewis.com
Jillian Rae Harris
   Texas Bar No. 24087671
   jillian.harris@morganlewis.com
1717 Main Street, Suite 3200
Dallas, Texas 75201-7347
T: +1.214.466.4000
F: +1.214.466.4001

***Counsel for Defendants***
***ETX Successor Athens and***
***ETX Successor System***

## CERTIFICATE OF SERVICE

I certify that I caused the foregoing to be filed via the Court's CM/ECF system and therefore served on all counsel of record on June 24, 2020.

*/s/ Justin R. Chapa*
Justin Roel Chapa